# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

SCOTT KONITZER,
a/k/a DONNA DAWN KONITZER,

      **Plaintiff,**

  v.                          **Case No. 23-cv-1500**

DR. PRAPTI P. KUBER, *et al.*,

      **Defendants.**

---

## ORDER

---

Plaintiff Scott Konitzer a/k/a Donna Dawn Konitzer, who is currently incarcerated and representing herself, brings this lawsuit under 42 U.S.C. § 1983. Konitzer was allowed to proceed on an Eighth Amendment deliberate indifference to medical needs claim against defendants Dr. Prapti P. Kuber, Nurse Amy Epping, and Nurse Barbara Bergstrom[1] for failing to give him medicine for his cough. The court also took supplemental jurisdiction over Konitzer's state law negligence claim. The defendants filed a motion for summary judgment. (ECF No. 51.) The motion is fully

---

[1] Defendant Jennifer Rosenbaum never made an appearance, and Konitzer missed the deadline to move for default judgment imposed by the Federal Court for the Western District of Wisconsin prior to transferring the case to this court. Konitzer also failed to timely identify the Jane Doe defendant. As such, both are dismissed.

briefed and ready for a decision. For the reasons stated below, the court grants the defendants' motion for summary judgment.

## FACTS

At all relevant times, Konitzer was incarcerated at Racine Correctional Institution. (ECF No. 53, ¶ 1.) Dr. Kuber was employed as a physician at Racine; Bergstrom was employed as the Assistant Manager of the Health Services Unit (HSU); and Epping was a Nurse Clinician II. (*Id.*, ¶¶ 2-4.)

On January 1, 2021, Konitzer was examined by Bergstrom in the HSU where she "complained of a fever, cough, and loss of taste and smell, but she tested negative for COVID-19." (ECF No. 53, ¶ 20.) On January 2, 2021, Konitzer sent a letter to HSU, stating that her illness was getting worse; "that it was very difficult and painful for her to breath when she tried to go to sleep . . . she had high fevers at night and severe muscle pain and a constant headache." (ECF No. 67, ¶ 20.) On January 3, 2021, Konitzer submitted a Health Services Request (HSR) asking for a cough suppressant because the Mucinex she was given was not preventing her cough. (ECF No. 53, ¶ 21.) She accused HSU staff of "torturing" her by denying her cough medicine. (ECF No. 67, ¶ 22.)

At some point on January 3, 2021, it is unclear from the record when, Konitzer was sent to the Emergency Room at Ascension All Saints Hospital, Spring Street Campus. (ECF No. 67, ¶ 23.) She was examined by non-defendant Dr. Sean Mackman, who observed that her vitals were normal "and that she had clear breath sounds." (*Id.*, ¶ 24.) Konitzer received a chest X-ray, "which showed patchy bilateral

2

opacities indicating a viral infection." (*Id.*) Based on these observations, Dr. Mackman concluded that it looked like Konitzer had COVID-19. (*Id.*) In addition to the Mucinex, Dr. Mackman prescribed a cough suppressant known as Tessalon. (*Id.*)

When Konitzer returned to Racine, an unidentified staff member examined her in the HSU. (ECF No. 53, ¶ 28.) None of the defendants examined Konitzer after her return from the emergency room. (*Id.*, ¶ 29.) After this examination, defendant Epping sent Konitzer a letter informing her that she would not be getting any other medications for her cough other than Mucinex and acetaminophen. (*Id.*, ¶¶ 28, 30.) Her providers made this decision because the hospital called and confirmed that Konitzer was negative for COVID-19, and because they thought allowing Konitzer to have a productive cough might help "clear Konitzer's airways of mucus and foreign materials." (*Id.*, ¶¶ 30, 38, 39.)

On January 8, 2021, Dr. Kuber was contacted by an unidentified staffer regarding Dr. Mackman's recommendation for Tessalon for Konitzer. (ECF No. 53, ¶ 38.) Because Konitzer was still experiencing coughing, Dr. Kuber was concerned that her cough was now over productive and ordered Tessalon for Konitzer. (*Id.*, ¶ 44.) In Dr. Kuber's opinion, "It is not effective to overuse cough suppressant in treating a patient's cough. Instead, it is best to observe the patient's symptoms progress and respond accordingly." (*Id.*, ¶ 50). Dr Kuber notes that this consideration "was especially important when treating a novel virus such as COVID-19." (*Id.*) At the time, there was also a shortage of medications like Tessalon, so Dr. Kuber stated she "had to carefully weigh a patient's needs against the availability of medications like

3

Tessalon." (*Id.*, ¶ 51.) If Dr. Kuber determined a patient could recover without a cough suppressant, she would not prescribe it. (*Id.*)

On January 11, 2021, and January 13, 2021 Konitzer submitted HSRs informing HSU that she did not receive the Tessalon despite receiving instructions on how to take it. (ECF No. 53, ¶ 52.) She also sent a letter to Warden Paul Kemper about this issue. (*Id.*, ¶ 53.) On January 19, 2021, Bergstrom responded to the letter stating that Racine's pharmacy did not have Tessalon, so an order was put into central pharmacy. (*Id.*, ¶ 54.) According to the records, the Tessalon was received and checked out on January 12, 2021. (*Id.*) It is unclear why Konitzer never received the Tessalon, but it is undisputed that on January 11, 2021, Konitzer submitted an HSR "stating that she was no longer coughing and that her only remaining symptoms was a loss of taste and smell. She stated that she felt 'at 100%.'" (*Id.*, ¶ 36.)

While Konitzer generally does not dispute the core facts, she asserts that Kuber based her decision on the fact that Konitzer was not observed coughing during her examinations. (ECF No. 67, ¶ 34.) She also states that Dr. Kuber did not consider pneumonia as the cause of her symptoms. (*Id.*, ¶¶ 36-40.) Additionally, Dr. Kuber was aware that there was a policy at Racine that would have allowed her to get the cough suppressant the same day she ordered it, but she ignored the policy. (*Id.*) Konitzer further states that she was severely coughing all night for several nights in a row, causing her to have a hard time breathing. (*Id.,* ¶ 55.)

4

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

5

# ANALYSIS

At the outset, Konitzer states that she is withdrawing her state law negligence claim. (ECF No. 74-1 at 2.) As such, that claim is dismissed.

Konitzer claims that the defendants violated her Eighth Amendment rights when they failed to give her cough suppressant to treat her severe cough for approximately 11 days in January 2021. A plaintiff must demonstrate four elements to support a deliberate indifference claim under the Eighth Amendment. *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023). First, "there must be a risk of harm to the plaintiff that is so objectively serious as to be 'excessive' (and that risk must in fact materialize)." *Id.* Second, "the defendant must 'know' of the risk (put differently, he must possess subjective awareness that the risk exists)." *Id.* Third, "the defendant's response to the risk must be so inadequate as to constitute 'disregard' of (or deliberate indifference toward) the risk." *Id.* Finally, "the plaintiff must prove that the defendant's deliberate indifference actually *caused* his injury." *Id.* (citing *Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011)).

The defendants concede that Konitzer's cough was an objectively serious medical condition. (ECF No. 52 at 8.) However, they argue that the defendants did not act with deliberate indifference to Konitzer's cough. To establish that a medical official acted with deliberate indifference, a plaintiff "must show more than mere evidence of malpractice." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). A plaintiff has to demonstrate a "blatant disregard for medical standards." *Id.* This means "the defendant's chosen 'course of treatment' departs radically from 'accepted professional

6

practice'". *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)).

No reasonable factfinder could conclude that the defendants' decision to not prescribe cough suppressant until several days later constituted a blatant disregard for medical standards. Konitzer does not demonstrate that Dr. Kuber's decisions were "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Petties*, 836 F.3d at 729. (quoting *Cole v. Fromm*, 94 F.3d 254, 260 (7th Cir. 1996)). The Seventh Circuit Court of Appeals has "emphasized the deference owed to the professional judgment of medical personnel." *Zaya*, 836 F.3d at 805. "By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment."

At the time, medical professionals were struggling with how to treat COVID-19; medical staff was strained; and medicine and supplies were limited. Dr. Kuber's decision to have Konitzer try Mucinex first and have her experience a productive cough is a decision based on her professional expertise. As was her decision to wait to prescribe cough suppressant. Additionally, the other two defendants were entitled to defer to Dr. Kuber's judgment. *See Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1062, 1075-76 (7th Cir. 2012) (holding that a nurse is entitled to rely on a doctor's instructions unless it is obvious that the doctor's advice will harm the prisoner).

7

While Konitzer clearly suffered from severe symptoms, including a bad cough, she ultimately recovered in approximately two weeks without the use of a cough suppressant. The cough suppressant possibly could have made her more comfortable, but Konitzer does not demonstrate that because she did not receive the cough suppressant, she suffered from "serious but avoidable pain." *Gabb v. Wexford Health Sources, Inc.* 945 F.3d 1027, 1034 (7th Cir. 2019) (quoting *Berry v. Peterman*, 604 F.3d 435, 438-39 (7th Cir. 2010)). Moreover, cough medication is often of little use. And there is no evidence that Dr. Kuber's decision to allow Konitzer to experience a cough negatively impacted Konitzer's illness—in fact Konitzer's health improved in short order.

As for Konitzer's argument that Dr. Kuber failed to follow policy in not getting her medicine from a local pharmacy, § 1983 only "protects plaintiffs from constitutional violations, not violations of state laws, or . . . departmental regulations." *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003).Additionally, Dr. Kuber's apparent failure to consider pneumonia would constitute negligence at best.

Because Dr. Kuber exercised professional judgment, which the other defendants were entitled to rely on, no reasonable factfinder could conclude that the defendants were deliberately indifferent to Konitzer's serious medical needs. Summary judgment is granted in the defendants' favor.

**CONCLUSION**

8

For the foregoing reasons, the court grants the defendants' motion for summary judgment The defendants also argued that they were entitled to qualified immunity. Because the court grants summary judgment in their favor on the merits, the court does not need to address the qualified immunity argument. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 51) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time,

9

generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 27th day of March, 2026.

STEPHEN DRIES
United States Magistrate Judge